IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 06-cv-02044-CMA

DANNY RAMOS-RIVERA,

    Applicant,

v.

WARDEN RICHARD HARLAN,

    Respondent.

**ORDER DENYING APPLICATION FOR WRIT OF *HABEAS CORPUS*
AND ORDER OF DISMISSAL**

    At the time Applicant Danny Ramos-Rivera initiated the instant action, he was in the custody of the Colorado Department of Corrections at the Trinidad, Colorado, Correctional Facility. He now, according to the Colorado Department of Corrections Inmate Locator website, is a fugitive. Mr. Ramos-Rivera has filed, through counsel, an Application for a Writ of *Habeas Corpus* Pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction in the Mesa County District Court of the State of Colorado in Criminal Case No. 02CR541. In an order filed on November 15, 2006, Magistrate Judge Boyd N. Boland directed Respondent to file an Answer to the Application, which they did on November 30, 2006. Mr. Ramos-Rivera did not reply to the Answer. After reviewing the entire file, I find that an evidentiary hearing is not necessary. For the reasons stated below, the Application will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2003, Mr. Ramos-Rivera pleaded guilty to unlawful possession with intent to distribute 1000 grams or more of a schedule II controlled substance. In his plea, he specifically reserved the right to appeal the denial of his motion to suppress the evidence derived from the alleged unlawful seizure of his person and search of his property. Mr. Ramos-Rivera filed an appeal to the Colorado Court of Appeals that was denied on June 16, 2005. On January 17, 2006, the Colorado Supreme Court denied his petition for a writ of certiorari. Based on the above information, Respondent concedes that the instant action is timely.

Mr. Ramos-Rivera sets forth one claim in this action. He asserts that the denial of his motion to suppress the fruits of his illegal detention, and the illegal search and seizure of his person and property, violated his Fourth and Fourteenth Amendment rights. Respondent also concedes that Mr. Ramos-Rivera has exhausted his state court remedies.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of *habeas corpus* shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Ramos-Rivera seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05. Pursuant to *House*,

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that

3

> contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 [ ] (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08 [ ]. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

4

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of *habeas corpus* only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Mr. Ramos-Rivera bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* (citation omitted).

### III. MERITS OF THE CLAIMS

As stated above, Mr. Ramos-Rivera claims that his Fourth and Fourteenth Amendment rights were violated when the trial court denied his motion to suppress.

Where the "State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner is not entitled to federal *habeas corpus* relief on the

5

basis that evidence obtained in an illegal search or seizure was presented at his trial. *Stone v. Powell,* 428 U.S. 465, 482 (1976).

The Tenth Circuit has determined that the meaning of the phrase, "opportunity for full and fair litigation," "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain,* 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. State of Okla.,* 583 F.2d 1161, 1165 (10th Cir. 1978). "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Id.*

Here, Applicant does not deny that he was provided with an evidentiary hearing in the state court to determine the merits of his constitutional claims. He claims, however, that (1) the trial court incorrectly determined that the police officer had reasonable suspicion to conduct an investigatory stop based on criminal activity; (2) the trial court used the wrong standard of review of the "non-consent" evidence; and (3) the Colorado Court of Appeals inappropriately upheld the trial court's denial of his motion to suppress the evidence regarding reasonable suspicion and consent to search.

    A.    <u>Reasonable Suspicion</u>

An investigatory stop or detention of a person need only be supported by a reasonable suspicion of criminal activity. *United States v. Hishaw,* 235 F.3d 565, 569 (10th Cir. 2000), *cert. denied,* 533 U.S. 908 (2001). Reasonable suspicion is a

"particularized and objective basis" for suspecting criminal activity by the person who is stopped by a police officer. *United States v. Callarman,* 273 F.3d 1284, 1286 (10th Cir. 2001). "Reasonable suspicion is a minimal level of objective justification which the officers can articulate, as distinct from an inchoate and unparticularized suspicion or hunch." *United States v. Valles,* 292 F.3d 678, 680 (10th Cir. 2002) (internal quotation marks omitted). Reviewing courts making reasonable-suspicion determinations "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted).

It is well established that a police officer may ask about a driver's authority to operate a vehicle and in so doing ask a driver to see his driver's license and registration and check the validity of each. *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001). Once a motorist produces a valid license and proof that he is entitled to operate the vehicle, he must be allowed to proceed on his way without further delay by an officer asking additional questions. *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 785 (10th Cir. 1995). Further delay is justified only if the officer has reasonable suspicion of illegal activity or if the encounter has become consensual. *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998). In finding an investigatory stop proper, a reviewing court must base its decision on an objective analysis of whether reasonable

suspicion exists to justify the temporary intrusion of the stop and not on the subjective intent of the arresting officer. *Whren v. United States*, 517 U.S. 806, 812 (1996).

The state trial court relied on correct federal constitutional standards by stating that a driver may be stopped if an officer has a reasonable suspicion that a driver has committed a crime. (Answer, App. A (State Trial Court Order Denying Suppression Mot.) at 7.) The trial court also set forth correct federal constitutional standards in stating that to detain and question a driver there must be evidence to support a reasonable suspicion that a criminal activity has occurred, a reasonable objective for an intrusion, and a reasonable connection between the scope and character of the intrusion and its objective. (Answer, App. A at 7.) The state trial court further applied correct federal law in stating that once a driver produces a valid license and proof he is allowed to drive the car he must be allowed to proceed. (Answer, App. A at 7.)

In review of the state trial court's denial of Mr. Ramos-Rivera's motion to suppress, the Colorado Court of Appeals relied on correct constitutional standards in stating that investigatory stops must be justified by a reasonable suspicion that criminal activity is afoot. (Answer, App. E (Colo. Appeals Ct. Op.) at 7.) Although relying on equivalent state law, the court of appeals correctly relied on federal constitutional standards by stating that a determination of whether reasonable suspicion exists is based on the totality of the circumstances. The totality of the circumstances includes articulable facts known to the officer, which taken together, create a reasonable suspicion of criminal activity that justifies an intrusion into a defendant's personal security. (Answer, App. E at 7.) Specifically, the Colorado Court of Appeals stated:

A police officer's observation of a vehicle traveling at a speed in excess of the posted speed limit constitutes reasonable suspicion of a criminal violation justifying an investigatory stop of the driver. *People v. Daverin*, 967 P.2d 629, 631-32 (Colo. 1998).

In this Case, the officer's observation of defendant committing a speeding violation constituted reasonable suspicion justifying an investigatory stop and an inspection of the vehicle registration. Contrary to defendant's suggestion, the statutory provision indicating that a speeding violation of one to four miles per hour above the posted speed limit does not result in the assessment of points against a driver's license, *see* § 42-2-127(5)(f)(I), C.R.S. 2004, in no way alters the fact that such an infraction, though minor, is still a clear violation of the law.

Nor are we persuaded by defendant's claim that he was subject to a custodial arrest unsupported by probable cause when the officer detained him to ascertain the validity of the out-of-state vehicle registration.

To determine whether an investigatory stop has escalated into an arrest, the trial court must consider the totality of the circumstances, including at least the following four factors: (1) the length of the detention; (2) whether the investigation was diligently pursued; (3) whether the suspect was required to move from one place to another; and (4) whether there were alternative and less intrusive methods available which the police unreasonably failed to pursue. *People v. Rodriguez*, 954 P.2d 1351 (Colo. 1997) (investigatory stop escalated into illegal arrest where driver was detained for ninety minutes and required to travel ten miles in a direction away from his stated destination).

"Insufficient proof of registration papers for an automobile provides reasonable suspicion that the car may be stolen, at a minimum justifying further investigation." *People v. H.J.*, 931 P.2d 1177, 1181 (Colo. 1997).

Here, the handwritten entries on the vehicle registration provided the officer with reasonable suspicion to believe the vehicle might be stolen or not lawfully registered, *see People*

9

> *v. Rodriguez*, *supra* (officer had reasonable suspicion justifying additional investigation where vehicle registration was partially handwritten and contained discrepancies), and the record establishes that the officer confirmed the validity of the vehicle registration as expeditiously as possible under the circumstances. The brief period of detention at the scene of the stop was not longer than was necessary to confirm the validity of the vehicle registration. Thus, defendant's reliance on *People v. Rodriguez*, *supra*, a case in which it was held that an investigatory stop became a custodial arrest when the officer directed the defendant to drive a significant distance for an inspection of the vehicle that could have been accomplished at the scene, is misplaced.
>
> Accordingly, we uphold the trial court's determination that the investigatory detention here was lawful. We further conclude that the officers' subjective intent is irrelevant. *See People v. Rodriguez*, *supra* (otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate; the validity of a search must be determined by an objective analysis of the circumstances supporting the search and not upon the subjective intent of the officers).

(Answer, App. E (*People v. Ramos-Rivera*, No. 03CA1363 (Colo. App. June 16, 2005 (unpublished)) at 7-9.)

As stated above, both the state trial court and the state court of appeals applied proper federal constitutional standards to determine whether the police officer had reasonable suspicion to stop Mr. Ramos-Rivera and to detain him while he investigated whether or not the vehicle Mr. Ramos-Rivera was driving was stolen. It also is clear from the decisions entered by the state trial court and the state court of appeals that evidence was sufficient to determine that the officer's decision to stop and detain Mr. Ramos-Rivera was based on more than just an unparticularized suspicion or hunch.

10

Applicant, therefore, was provided with an opportunity for full and fair litigation of his reasonable suspicion claim, and federal *habeas* review of the claim is precluded.

B. Consensual Encounter/Search

Consensual encounters do not implicate the Fourth Amendment. *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." *United States v. Wallace,* 429 F.3d 969, 974 (10th Cir. 2005) (internal quotation marks and citation omitted). An officer's questioning is non-coercive if a "reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *Wallace*, 429 F.2d at 974-75 (internal quotation marks and citation omitted). A routine traffic stop becomes a consensual encounter once the police officer has returned the driver's documentation so long as "a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997) (internal quotation marks and citation omitted). "An officer's request for consent to search does not taint an otherwise consensual encounter 'as long as the [officer] [does] not convey a message that compliance with [his] request is required." *United States v. McCurdy,* 40 F.3d 1111, 1119 (10th Cir. 1994) (internal quotation marks and citation omitted). "The scope of a search is 'generally defined by its expressed object,' and 'is limited by the breadth of the consent given.' " *Elliott,* 107 F.3d at 814-15 (citations omitted). An objective reasonableness test is applied to measure the scope of a person's consent: "What would the typical reasonable person

have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). There is probable cause to search, without consent or warrant, where a hidden compartment is found and there is other suggesting criminal activity. *See United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (collecting cases).

Furthermore, "warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement." *United States v. Zubia-Melendez,* 263 F.3d 1155, 1162 (10th Cir. 2001). Consent is one such exception. "[A] vehicle may be searched if a person in control of the vehicle has given his voluntary consent to the search." *Id.* Whether voluntary consent was given is a question of fact determined by the totality of the circumstances. *Id.* The government bears the burden of showing the consent was voluntary. *Id.* To meet its burden, the government (1) "must proffer clear and positive testimony that consent was unequivocal and specific and freely given" and (2) "prove that this consent was given without implied or express duress or coercion." *Id.* (internal quotations marks and citation omitted).

The state trial court relied on correct federal constitutional standards by stating that just because the legitimate reason for the stop has been exhausted the officer is not barred from initiating a consensual encounter with a defendant, as long as voluntary cooperation of an individual is elicited through non-coercive means. (Answer, App. A at 8.) The trial court further stated that when an investigatory detention becomes a consensual encounter is based on an objective determination of whether a reasonable person under the circumstances would believe he or she is free to leave or disregard the

12

police officer's request and that inherent social pressure to cooperate with an officer is not by itself reason to call the encounter nonconsensual. (Answer, App. A at 8.)

As for the scope of the consent, the trial court relied on proper federal constitutional standards in stating that the scope is determined by what a reasonable person would have understood by the exchange about the consent. (Answer, App. at 9.) Furthermore, the trial court relied on proper federal constitutional standards in stating that partial disassembly of property may be within the scope of a general consent, especially if there is no objection, but even if drilling into a secret compartment of a vehicle is beyond the scope of a consent, probable cause may support the drilling. (Answer, App. A. at 9-10.)

In upholding the trial court's denial of Applicant's motion to suppress evidence regarding the consent to search, the Colorado Court of Appeals found the following:

> A warrantless search is constitutionally justified when it is conducted pursuant to voluntary consent. Consent to search is voluntary if it is the product of an essentially free and unconstrained choice and not the result of circumstances that overbear the consenting party's will. The prosecution bears the burden of proving by clear and convincing evidence that a person's consent to search was voluntarily given. Before a court may conclude that consent was voluntarily given, it must find no objective evidence of coercion, duress, deception, promises, threats, intrusive conduct, or other undue influence by the police that critically impaired the person's judgment. *People v. Miller*, 94 P.3d 1197, 1201-02 (Colo. App. 2004).
>
> Here, the trial court found that the officers did not coerce or threaten defendant in any manner and that, once the officers returned defendant's documents and informed him he was "free to go," a reasonable person in defendant's position would not have felt obligated to consent to the roadside

13

search of the vehicle. The trial court further found that defendant voluntarily agreed to accompany the officers to the county garage for a more extensive search of the car.

Based on our review of the record, we agree with the trial court's conclusion that defendant voluntarily consented to the two searches of the car. Thus, because the encounter was consensual up until the point that the cocaine was discovered and defendant was arrested, defendant was not subject to a "seizure" within the meaning of the Fourth Amendment. *See People v. O'Neal*, 32 P.3d 533, 537 (Colo. App. 2000) (a consensual encounter is not a seizure and does not implicate Fourth Amendment protections).

II.

Finally, defendant argues that the intrusion into the hidden compartment with a drill exceeded the scope of any consent which may have been granted. We conclude defendant is without standing to raise this claim.

Before a defendant can challenge the constitutional legitimacy of a governmental search, he must demonstrate that he has a legitimate expectation of privacy in the areas searched or the items seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L.Ed. 2d 387 (1978); *People v. Galvadon*, 103 P.3d 923 (Colo. 2005); *People v. Naranjo*, 686 P.2d 1343, 1345 (Colo. 1984).

Here, the prosecution filed a response to defendant's suppression motion specifically challenging defendant's standing to litigate the search of the hidden compartment. At the suppression hearing, defendant testified and explicitly disavowed any privacy interest in the hidden compartment. Based on this concession, the prosecutor argued that defendant had no standing to challenge the search of the hidden compartment. Although the trial court did not address the threshold question of standing and the People do not raise the issue on appeal, we nevertheless conclude the issue is properly before us due to defendant's concession in the trial court. *See People v. Thorpe*, 40 Colo. App. 159, 164, 570 P.2d 1311, 1316 (1977) (if a defendant testifies at a suppression hearing and denies any privacy interest in the

14

> area searched by the police, he "cannot claim on appeal that he had an interest in contradiction with his own testimony"); *see also People v. Eppens*, 979 P.2d 14, 22 (Colo. 1999) (a trial court's ruling may be upheld on any ground supported by the record).
>
> Here, after defendant testified the car belonged to his cousin, the prosecutor asked defendant about the hidden compartment:
>
>> PROSECUTOR: And did you have any reasonable expectation of privacy in this compartment that was in the vehicle where the drugs were found? Did you keep anything of your own in there?
>>
>> DEFENDANT: Oh, no.
>>
>> PROSECUTOR: Had you ever seen that compartment before?
>>
>> DEFENDANT: No.
>>
>> PROSECUTOR: Did you know that compartment even existed?
>>
>> DEFENDANT: No.
>
> This Testimony conclusively establishes that defendant was without any privacy interest in the hidden compartment. Therefore, on appeal, defendant is barred from challenging the search of the compartment. *People v. Thorpe*, *supra*.

(Answer, App. E at 8-11.)

As stated above, both the state trial court and the state court of appeals applied proper federal constitutional standards to determine whether the search was consensual and whether the scope of the search was proper. Applicant's documents were returned to him, and he was told he was free to go. The police officer asked Applicant if he would

mind if a search was conducted of the vehicle, and Applicant agreed. The trial court found that the police officers did not touch Applicant, that the tone of the conversation was friendly and polite and generally not aggressive, and that the request for consent to a search was not made in a threatening and coercive manner. (Answer, App. A at 9.) The prosecution provided clear and convincing evidence that Applicant freely and voluntarily gave consent to a search of the vehicle.

As for the search of the secret compartment, the trial court found that Applicant consented to having his car searched at the garage, that the hidden compartment first identified by the police officer in the initial search was the type used to transport drugs, and that the undercarriage where the compartment was located was "sticky" indicating the compartment was recently created. (Answer, App. A at 10.) Based on these findings, and the described demeanor of Applicant, and the other occupant of the car, at the time of the stop, the trial court found probable cause for the drilling of the secret compartment. (Answer, App. A at 10.) Applicant, therefore, was given the opportunity for full and fair litigation of his illegal search claim, and federal *habeas* review of the claim is precluded.

## IV. CONCLUSION

To the extent that Applicant is asking this Court to retry the evidence or redetermine the credibility of Mr. Ramos-Rivera or of the police officers, 28 U.S.C. § 2254(d) does not give federal courts a "license to redetermine the credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). A trial court's credibility determination

is owed great deference.  *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984).  The trial court's determination of the facts at the evidentiary hearing is subject to review under 28 U.S.C. § 2254(d)(2) and only would be subject to the granting of a *habeas corpus* application if the trial court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, which is not the case here.

The Court concludes that Mr. Ramos-Rivera was provided with an opportunity for full and fair litigation of his Fourth Amendment claims in state court.  The Court, therefore, rejects his Fourth and Fourteenth Amendment claims and dismisses the action for lack of merit.  Accordingly, it is

ORDERED that the Application is DENIED and the action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

DATED at Denver, Colorado this   13th   day of March, 2009.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge